UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-61225-CIV-MARRA

COBRA INTERNATIONAL, INC.,
a Florida corporation

       Plaintiff/Counter-Defendant,

v.

BCNY INTERNATIONAL, INC., a New York,
corporation, and JORDARA FAR EAST, INC.,
a New York corporation; FRED'S STORES OF
TENNESSEE, INC., a Tennessee corporation;
FAMILY DOLLAR STORES, INC., a Delaware
corporation; DOLLAR GENERAL CORPORATION,
a Tennessee corporation; BRUCE CAGNER, an individual;
and LARRY ROTH, an individual,

       Defendants/Counter-Plaintiffs;

v.

COBRA INTERNATIONAL, INC., a Florida Corporation;
and BARRY EAVZAN, an individual,

       Counter-Defendants.
_____/

## OPINION AND ORDER

       THIS CAUSE is before the Court upon the parties' claim construction briefs and the

Markman hearing held before the Court.    The Court has carefully considered the patent, the

prosecution history, the parties' briefs, the evidence presented at the Markman hearing, the

arguments of counsel, and is otherwise fully advised in the premises.

1

## I.  Background

The claims in United States Patent Number 5,821,858 involve a lighted shoe apparatus. See Exhibit A to Plaintiff's Opening Brief in Support of Claim Construction For Markman Hearing (hereinafter, the "858 patent"), Abstract.  The '858 patent relates generally to the field of footwear.  More specifically, it relates to a slipper or other type of shoe containing a lighting assembly.  The assembly includes an array of outwardly directed light emitting diodes mounted to the slipper vamp which light in a repeating sequence when the wearer shifts weight onto the slipper insole, a logic circuit and a grounded pressure-activated control switch hidden underneath the slipper insole, and interconnection wiring electrically joining the logic circuit and the control switch.  Id., Col. 1, lines 7-16.  Prior to the '858 patent, there has been footwear equipped with lighting assemblies including power circuits and lighting elements.  Id., Col. 1, line 3 - Col. 3, line 18.  The object of patent '858 was: 1) to provide the lighted shoe apparatus with a means for sequencing the activation of the lighting elements in a repeating cycle; 2) to provide such footwear in a manner that maximizes battery life and minimizes weight; 3) to provide the lighting assembly for such footwear compactly and easily mounted and concealed within the footwear and  4) to provide a lighting assembly within the footwear that is durable, reliable and inexpensive to manufacture.  Id. Col. 3, lines 19-33.

## II.  Legal Standard

### A.  General Claim Interpretation Principles

It is the Court's role to construe the claims of the disputed patent.  Markman v. Westview Instruments, Inc., 517 U.S. 370, 388-90 (1996).  The Court principally looks to the claims made in the patent, specifications, and prosecution history.  Alza Corp. v. Mylan Labortories, Inc., 391

F.3d 1365, 1370 (Fed Cir. 2004); <u>Comark Communications, Inc. v. Harris Corp.</u>, 156 F.3d 1182,

1186 (Fed. Cir. 1998); <u>Vitronics Corp. v. Conceptronic, Inc</u>., 90 F.3d 1576, 1582 (Fed. Cir.

1996). These sources are considered "intrinsic evidence." <u>Vitronics</u>, 90 F.3d at 1582.

       In approaching claim construction, the words of the claim are to be given their ordinary

and customary meaning as understood by one with ordinary skill in the art at the time of the

invention. <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1313 (Fed. Cir. 2005); <u>see</u> <u>also</u> <u>Elekta</u>

<u>Instrument S.A. v. O.U.R. Scientific International, Inc.</u>, 214 F.3d 1302, 1307 (Fed. Cir. 2000)

("Absent an express intent to impart a novel meaning, claim terms take on their ordinary

meaning."). Since a person with ordinary skill in the art would look not just to the term's context

in a particular claim, but the term's context in the specification and the prosecution history as

well, courts must approach claim construction in this same manner. <u>Phillips</u>, 415 F.3d at 1313.

Furthermore, "claims are interpreted with an eye toward giving effect to all terms in the claim."

<u>Bicon, Inc. v. Straumann Co.</u>, 441 F.3d 945, 950 (Fed. Cir. 2006). Otherwise, characteristics

described in a claim would be considered superfluous rendering the scope of the patent

ambiguous and leaving the public to guess about which claim language is deemed necessary and

which is nonlimiting elaboration. <u>Id</u>. Additionally, courts must pay particular attention to the

patentee's own definition of the claim terms, which control. <u>Oakley, Inc. v. Sunglass Hut</u>

<u>International</u>, 316 F.3d 1331, 1341(Fed. Cir. 2003) ("a patentee may be his or her own

lexicographer by defining the claim terms."); <u>Rexnord Corp. v. Laitram Corp.</u>, 274 F.3d 1336,

1342 (Fed. Cir. 2001) ("patent law permits the patentee to choose to be his or her own

lexicographer by clearly setting forth an explicit definition for a claim term that could differ in

scope from that which would be afforded by its ordinary meaning.").

With respect to the relationship between the specification and the claims, the Federal Circuit has explained that "claims must be read in view of the specification" and that the specification "may act as a sort of dictionary, which explains the invention and may define terms used in the claims."  <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 979 (Fed. Cir. 1995) (<u>en banc</u>), <u>aff'd</u>, 517 U.S. 370 (1996).  The Federal Circuit has cautioned, however, that "there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification."  <u>Comark</u>, 156 F.3d at 1186.  As such, "one may not read a limitation into a claim from the written description, but one may look to the written description to define a term already in a claim limitation, for a claim must be read in view of the specification of which it is a part."  <u>Renishaw PLC v. Marposs Societa' Per Azioni</u>, 158 F.3d 1243, 1248 (Fed. Cir. 1998).

Although courts should begin their analysis with intrinsic evidence, courts may rely on extrinsic evidence, which includes expert and inventor testimony as well as dictionaries and technical treatises.  <u>Markman</u>, 52 F.3d at 980.  Extrinsic evidence, however, is viewed as "less reliable than the patent and its prosecution history in determining how to read claim terms."  <u>Phillips</u>, 415 F.3d at 1318.  With respect to the use of dictionaries, courts may consider dictionary definitions to help understand and define claim terms.  <u>Id.</u>

<u>B.  Means Plus Function Elements</u>

Section 112 of Title 35 of the United States Code provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material or acts described in the specification and equivalents thereof.

4

35 U.S.C. §112.

To invoke 35 U.S.C. § 112(6), "the alleged means plus function claim element must not recite a definite structure which performs the described function." Cole v. Kimberly-Clark Corp., 102 F.3d 524, 531 (Fed. Cir. 1996). When a claim limitation is expressed in means-plus-function language, the first step is to identify the function. Generation II Orthotics, Inc. v. Medical Technology, Inc., 263 F.3d 1356, 1363 (Fed. Cir. 2001). The second step is to identify the corresponding structure described in the specification and the equivalents thereof. Id. Notably, a presumption arises that an element is a means-plus-function element when the term "means" is used in a patent. Unidynamics Corp. v. Automatic Products International, 157 F.3d 1311, 1319 (Fed. Cir. 1998). To overcome this presumption, the court must determine "whether the claims recite sufficient structure for performing the claimed function." Envirco Corp. v. Clestra Classroom, Inc., 209 F.3d 1360, 1365 (Fed. Cir. 2000)

### III.  Claim Construction

CLAIM 9.

(a)  "A lighted shoe apparatus, comprising:"

The parties all agree that this preamble does not limit the claim.


(b) "a shoe having a shoe body"

This limitation should be construed according to its ordinary meaning by one skilled in the art.

5

(c) "a plurality of outwardly directed and externally visible light emitting elements mounted to said shoe body for lighting in a sequence"

This limitation is also construed according to its ordinary meaning by one skilled in the art. This refers to two or more lights mounted to the shoe body so that they are visible externally and which are to light in a sequence.

(d) "an Or gate having Or gate input terminals and an Or gate output terminal,"

This limitation is also construed according to its ordinary meaning by one skilled in the art. An Or gate is a specific type of logic circuit where the output from the circuit is "off" or "false" whenever all inputs to the circuit are "off" or "false," and where the output from the circuit is "on" or "true" where at least one of the inputs from the circuit is "on" or "true." The Or gate also has input terminals and an output terminal. The Court rejects Plaintiff's contention that the term Or gate in this claim should be construed to mean any logic gate.

(e) "a voltage source connected to said Or gate,"

This limitation is also construed according to its ordinary meaning by one skilled in the art. It means a power source or battery connected to the Or gate through one of the Or gate input terminals which provides power to the Or gate which then is used to power the rest of the circuit.

(f) "a ground wire containing a control switch connected to one said Or gate input terminal,"

This limitation is also construed according to its ordinary meaning by one skilled in the

6

art.  It means a wire connected to the circuit's ground which includes a control switch which is connected to the Or gate through one of the Or gate input terminals.

(g) "a clock having a clock input terminal connected to said Or gate output terminal for generating a step output signal when said Or gate output is on and having a clock output terminal"

This limitation is also construed according to its ordinary meaning by one skilled in the art.  The clock generates a step output signal, i.e., a sequence of pulses, when the output of the Or gate is on.  The clock is connected to the Or gate through the clock input terminal and the Or gate output terminal.

(h) "a first counter having a first counter input terminal connected to said clock for translating said step output signal into a counted Boolean sequence of numbers and having first counter output terminals"

This limitation is also construed according to its ordinary meaning by one skilled in the art when read together with other limitations in Claim 9.  The first counter (as compared to the second counter, which is part of the "cycle restarting means" to be discussed later in this order) is connected to the clock through the clock's output terminal and the first counter's input terminal.  The first counter counts the steps or pulses in the output from the clock.  The count is output as a sequence of Boolean numbers on the first counter's output terminals.  The Boolean numbers in the output sequence are represented by the values of the signals on the first counter's output terminals.

Reading this element of the claim in isolation suggests that the first counter can have two or more output terminals.  However, when read in context with a later element of the claim, which refers to each of the plurality of And gates being connected to "both" of the first counter terminals, and recognizing the rule of claim construction that effect is to be given to all terms in the claim, it is apparent that the claim is limited to a first counter having two output terminals. The Court recognizes that generally a preferred embodiment should not be read as a limitation on a patent claim.  However, in this case, the limitation of the word "both" is contained in the claim itself, and the preferred embodiment is consistent with the limiting language of the claim.

(i) "a plurality of And gates, including a counter controlling And gate, each said And gate having And gate input terminals and an And gate output terminal, said And gate input terminals being connected in parallel to both of said first counter output terminals, such that each said And gate receives each counted Boolean number, wherein each of said plurality of light emitting elements is connected to a corresponding one of said And gate output terminals, such that an on signal from each said And gate causes the corresponding said light emitting element to light, and such that an off signal from each And gate causes the corresponding light emitting element to not light,"[1]

(1) "a plurality of And gates, including a counter controlling And gate, each said And gate having And gate input terminals and an And gate output terminal,"

_____

[1]  This element of Claim 9 has a number of clauses.  The Court will deconstruct the element into smaller segments for ease of discussion.

8

These limitations are also construed according their ordinary meaning by one skilled in the art.  There are at least two And gates, one of which performs the function of controlling the second counter which is part of the cycle restarting means.  An And gate is a logic gate with an output terminal that is "on" or "true" when all of its input terminals are "on" or "true," and with an output terminal that is "off" or "false" when any one of its input terminals is "off" or "false." The Court concludes that the patent's inclusion of inverters, described in the patent as "a distinctive nipple configuration," are separate structures from the And gates and do not alter the manner in which the And gates operate or function.  The inverter alters the condition of the input before it interacts with the And gates.[2]

The Court rejects Plaintiff's assertion that, at this stage of the proceedings, the Court should interpret "plurality of And gates" to include "logic gates."  In this regard, Plaintiff essentially is asking the Court to make a premature determination of equivalency.  A determination of equivalency or lack of equivalency goes to the question of infringement, and cannot be determined at the claim construction stage.  See Lockheed Martin Corp. v. Space Systems/Loral, Inc., 324 F.3d 1308, 1318 (Fed. Cir. 2003).  The Court also chooses to defer ruling on whether, because of the prosecution history of this patent, Plaintiff is precluded from asserting under the doctrine of equivalency that the use of a decoder can be covered under the patent.  See Transcript of Markman Hearing at 143.

(2) "said And gate input terminals being connected in parallel to both of said first counter

---

[2]  The Court recognizes that the distinctive nipple configuration is not recited in Claim 9. However, Defendants have acknowledged that the presence of the distinctive nipple configuration is implicit in Claim 9.  See Transcript of Markman hearing at 171-72.

output terminals, such that each said And gate receives each counted Boolean number,"

This limitation is also construed according to its ordinary meaning by one skilled in the art.  As discussed previously, the use of the word "both" when describing the first counter output terminals discloses that there are two output terminals on the first counter.  The And gate input terminals for all of the And gates are connected to the two first counter output terminals in parallel so that each And gate, including the "counter controlling And gate," will receive each Boolean number which is output from the first counter.

(3)   "wherein each of said plurality of light emitting elements is connected to a corresponding one of said And gate output terminals, such that an on signal from each said And gate causes the corresponding said light emitting element to light, and such that an off signal from each And gate causes the corresponding light emitting element to not light,"

This limitation is also be construed according to its ordinary meaning by one skilled in the art.  Each of the light emitting elements is connected to a corresponding And gate output terminal so that when the output signal from the corresponding And gate is "on" or "true," the light emitting element will light. Conversely, when the output from the And gate is "off" or "false," the corresponding light emitting element will not light.

(j) "cycle restarting means."

This element is construed as a means-plus-function in accordance with 35 U.S.C. § 112(6) because the claim element does not recite definite structure which performs the described function.  Cole, 102 F.3d at 531.

The function of the cycle restarting means is to restart the cycle so that a signal will be generated to reactivate the clock such that the counting and lighting cycle begins again. The cycle is a complete count of all the numbers that can be output from the first counter and the corresponding flashing pattern generated by the plurality of And gates.

The structure disclosed in the specifications that performs this function consists of: the second counter (Fig. 2, 74), which is connected at its input terminal by the output terminal of and driven by the output from the counter controlling And (Fig. 2, 58), which second counter is connected by its output terminals to the input terminals of the cycle restarting And gate (Fig. 2, 76), and which cycle restarting And gate is connected by its output terminal to the second of the input terminals of the Or gate. Fig. 2, 32, and equivalents thereof. See Col. 6, lines 35-47.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 18th day of June, 2008.

KENNETH A. MARRA
United States District Judge

copies furnished to:
all counsel of record

11