UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

COBRA INTERNATIONAL, INC.,                 :          Case No. 0:05-cv-61225-KAM
                                           :
                        Plaintiff,         :
                                           :
            v.                             :
                                           :
BCNY INTERNATIONAL, INC., *et al*          :
                                           :
                        Defendants.        :
_____/

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW

Case No. 0:05-cv-61225-KAM

Defendants BCNY International, Inc. Jordara Far East, Inc., Fred's Stores of Tennessee, Inc., Family Dollar Stores, Inc., Dollar General Corporation, Bruce Cagner and Larry Roth (collectively, "BCNY") hereby submit their motion for summary judgment, and in support thereof, state as follows:

## I.     INTRODUCTION

Cobra claims that BCNY is infringing claim 9 of U.S. Patent No. 5,821,858 ("the '858 Patent") by selling footwear with lights activated by either a pressure or motion sensitive switch (the "Accused Products").  There is no question of material fact about the structure and function of the Accused Products.  A comparison of the Accused Products to the requirements of '858 Patent claim 9, as construed by this Court in its June 18, 2008 Order (DE 281), clearly establishes multiple grounds for non-infringement, including: (1) the switch in the Accused Products is connected in a manner expressly disclaimed by Cobra during the second reexamination of the '858 Patent and is also not connected to an OR gate as required; (2) the Accused Products do not have the claimed "cycle restarting means," including the required second counter; and (3) the Accused Products do not have the claimed plurality of AND gates or a counter controlling AND gate connected as required.  The absence of any one of these limitations precludes a finding of infringement.  The Court, therefore, should grant summary judgment of non-infringement.

BCNY is also entitled to partial summary judgment on any claim for damages prior to January 11, 2011, when the '858 Patent was reissued following an *ex parte* reexamination proceeding.  Although Cobra seeks damages for infringement from the date of first notice, Cobra is precluded from recovering any damages prior to January 11, 2011 because Cobra made a substantive and narrowing amendment to claim 9 during the recent reexamination to overcome the prior art.

## II.     FACTS

### A. The Parties

Cobra is the owner by assignment of the '858 Patent.  *See* '858 Patent, attached hereto as Exhibit **A**.  On July 25, 2005, Cobra sued BCNY and Jordara Far East, Inc.,[1] and on May 2, 2006,  Cobra amended the complaint to add Family Dollar Stores, Dollar General Stores, Fred's

---

[1]     Jordara Far East is a fictitious name of BCNY.  *See* SOF, at n.1.  The SOF has been filed concurrently herewith.  Exhibits referenced in this motion are attached to the SOF.

Department Stores, Larry Roth and Bruce Cagner as defendants. (DE 48).

### B. The '858 Patent

#### 1. General Description of Lighted Footwear Technology

Lighted footwear has been in existence for decades and the art of lighted footwear is very crowded. The specification of the '858 Patent describes at least 23 different prior art patents for lighted footwear. *See* '858 Patent, col. 1, lines 26 to col. 3, line 18 (Exhibit **A**).

From well before Cobra filed its patents, conventional flashing footwear systems contained three basic components: a battery, one or more lights, and a circuit with a switch that controls when the lights turn on. Because a switch can close and open quickly, circuits were designed to keep the lights on for a period of time after the circuit was activated so that the lights could be seen by the user. These circuits often flashed the lights in patterns. The circuits also often included functions to turn off the lights after a period of time, even if the switch stayed closed, in order to avoid quickly draining the battery.

The electrical circuits at issue include digital logic gates. Logic gates are simple circuits that form the building blocks from which more complex digital circuits are made. [2] Conceptually, a logic gate has one or more inputs that can be either "True" or "False", typically designated as "1" or "0", respectively, and an output which is "True" or "False" depending on the type of logic gate and the values of the input signals. In the circuit itself, the True and False values correspond to particular voltages, such as five (5) volts for a True and zero (0) volts for a False. The outputs from a logic gate can be used as inputs to other logic gates or as a source of power for other system components.

There are several types of logic gates. Two of the most basic types – AND and OR gates – are recited in the '858 Patent claims and implement fundamentally different operations. The output of an "OR gate" will be True if at least one of the inputs is True. The output of an OR gate will be False only when all of its inputs are False. In contrast, the output of an AND gate will be True only if all its inputs are True. If one or more of the inputs to an AND gate is False, the output of the AND gate will be False.

---

[2]   Attached as Exhibit **B** are excerpts from the presentation of BCNY's expert during the *Markman* hearing. This presentation provides a tutorial on the basic components of electrical circuits relevant to this motion. The operation of logic gates can be represented in "truth tables" which list all possible input conditions and the corresponding output. Truth tables for various logic gates are also set forth in Exhibit **B**.

There are two other common components of digital circuits discussed in the patent: a clock and a counter. A "clock" is a circuit component that produces an output signal which switches between two values (e.g., 0 and 1), at a periodic rate when the clock circuit is on. Clock signals are commonly used to synchronize the operation of various other parts of a circuit. A "counter" is a circuit which counts the number of times an input signal changes from one value to another, such as from 0 to 1. In the context of lighted footwear and other apparel, and from well before Cobra filed its patent, counters were used to count the 'ticks' from a clock and the counted value used to control a lighting sequence.

The highest number a counter can count up to is determined by the number of 'bits' in the counter, where each bit represents a single binary digit. The more bits (digits) a counter has, the larger the number that it can count to. For example, a "2-bit" counter uses two binary digits and can count from 0 to 3, represented as the binary numbers 00, 01, 10, and 11. A seven-bit counter can count from 0 to 127, represented as the seven-bit binary numbers 0000000 to 1111111. When a counter reaches its highest value, it typically wraps back around to zero (like an odometer in a car). Each binary digit of the count is output on a corresponding output signal or wire from the counter. Thus, a two-bit counter needs two outputs, one for each of the two digits, while a seven -bit counter needs 7 outputs for the seven binary digits representing binary values between 0 and 127.

## 2. The Specification and Operation of the Disclosed Circuit

The '858 Patent is narrowly focused and discloses only one very specific electrical circuit for sequentially activating lights on a shoe. The single circuit of the '858 patent is shown in patent Figure 2, which is set forth below and has been annotated to identify various claimed circuit elements in accordance with the teachings of the patent itself.[3]

As taught in the patent, and with reference to Fig. 2, switch 24 is a pressure-activated switch hidden in the insole of the shoe. *See* '858 Patent, col. 5, lines 61-62. When a person wearing the shoe steps down, the switch 24 is activated. In response, wire 26 provides a "1" (or ON) input to the OR gate 32. Because at least one input of the OR gate is a "1", the OR gate then outputs a "1". This signal value is used to start the clock 40.

---

[3] Figs. 2, and 4 through 9 of the '858 Patent show the same circuit at various times during its operation. *See* '858 Patent (Exhibit **A**).

3



FIG.2

When the clock 40 is running, its output ticks are "counted" by the two-bit counter 42. The count starts at zero, advances through the numbers 1, 2, and 3 (in binary digits) and then, since 3 is the largest value that can be represented using two bits, wraps back to a count of zero and continues. The counted number of clock ticks is output as a two-digit binary number on counter 42's two output lines.

The circuit has four AND gates 52, 54, 56, 58, each with two inputs and one output. As shown and claimed, the two inputs of each AND gate receive both output lines from the two-bit counter 42. In the illustrated circuit, the AND gate inputs are configured so each of the four AND gates 52, 54, 56, 58 will 'recognize' only one of the four count values 0, 1, 2, or 3 (or in binary: 00, 01, 10, 11) output.[4] When an AND gate recognizes its specific input count, it activates by generating a "1" at that time, but otherwise generates a "0". The net result is that the AND gates get activated in a sequence—first AND gate 52, then AND gate 54, then AND gate

---

[4]   The configuration of each AND gate to recognize a particular number is shown in the circuit by a "nipple" 72 located at certain inputs of various AND gates and indicated as a dot: "•". This extra circuit element indicates that the value on the respective signal is reversed, in this case before being applied to the gate. For example, AND gate 51 has dots on both of its inputs. This indicates that the input values are reversed before being applied to the AND gate proper. As a result, the output of AND gate 52 is a "1" only when the first count is zero because the (0,0) on the two inputs is reversed to (1,1) before the AND function is evaluated.

4

56, and lastly AND gate 58.  As "1s" are output from the AND gates 52, 54, and 56 in sequence, the LEDs 62, 64, and 66 are lighted in sequence.  *See id.*, at col. 6, lines 23-32.

The "counter controlling" AND gate 58 outputs a "1" when the count from the Counter 42 is a 3 (binary "11").  A second Counter 74 counts the number of times that this event happens.  Thus, Counter 42 controls the sequential lighting of LEDs while Counter 74 operates to count how many times the first Counter 42 has cycled through its count of 0, 1, 2, 3 and the LEDs have lighted in sequence.

The two outputs from the second Counter 74 are connected to an AND gate 76, and the output of AND gate 76 is input to the OR gate 32.  When the second Counter 74 is at a count of 0, 1, or 2, the output of the AND gate 76 is False (since at least one of its inputs is False, or "0").  The nipple dot "•" on the output of AND gate 76, however, means that this output value is *reversed*.  As a result, the reversed output from AND gate 76 is *one* when the second Counter 74 is at a count of 0, 1, or 2, and a zero when the second Counter 74 reaches a count of three.  Since the output from OR gate 32 is a "1" when *either* one of its inputs is a "1", the (reversed) output from AND gate 76 ensures that once the circuit is started by closing the switch, the OR gate 32 output stays at 1 until the second Counter reaches 3.  Thus, until the second Counter reaches 3, the clock keeps running, the first Counter 42 will keep cycling through its count of 0, 1, 2, 3, and the LEDs will keep flashing in sequence.  However, when the first Counter 42 reaches a count of 3 for the third time (as counted by the second Counter 74), the reversed output of AND gate 76 goes to zero.  If the switch is also open at that time, then both inputs to OR gate 32 will be "zero" and the OR gate will turn off, thereby stopping the clock and the lighting of the LEDs.

### 3.  Asserted Claim 9

Claim 9 of the '858 Patent maps one-for-one with the single embodiment described in the specification.  Annotated Figure 2 above shows how the claim limitations map directly to the specific circuit disclosed in the patent.

The Court construed claim 9 in its June 18, 2008 Order.  (DE 281).  The relevant constructions are discussed below.[5]

### 4.  Prosecution History Summary for Asserted Claim 9

As addressed in more detail in Section III herein, arguments made during prosecution of a patent to explain the scope of the invention or to distinguish it from the prior art can give rise to

---

[5]      A summary of the relevant constructions is provided in Exhibit **C** hereto.

prosecution history estoppel, limiting the scope of the claims. Such prosecution history estoppel can result from arguments made in an original examination and in a reexamination. The '858 Patent was subject to an original examination and two separate reexamination proceedings and Cobra's arguments to the Patent Office substantially limit the scope of claim 9.

### Original Examination

During the original examination, Cobra distinguished claim 9 from prior art disclosing an Exclusive-OR (XOR) gate used with a counter and decoder[6] by limiting claim 9 to the very specific circuitry disclosed by the '858 Patent.

The '858 Patent was initially filed with 7 claims. Independent claim 1, as filed, recited "a plurality of AND gates." Independent claim 7, as filed, also recited "a plurality of AND gates," but it did so much more generally because it omitted the specific way the AND gates were connected to the counter and to the LEDs. *See* SOF, ¶ 4. During prosecution of the '858 Patent, the Patent Office rejected pending claim 7 as being obvious over Patent No. 5,381,615 to MacMillan in view of Patent No. 4,231,079 to Heminover. *See* SOF, ¶ 4.

MacMillan discloses a lighted footwear circuit with an activation switch connected to an XOR gate, where the output from the XOR gate causes LEDs to light. SOF, ¶ 2. Figure 2 of Heminover discloses a lighted apparel circuit in which the output from a clock is counted by a *four-bit counter.* A decoder circuit receives the 4-bit binary count from the counter (representing a number from 0 to 15) and turns on one of 16 corresponding outputs signals. SOF, ¶ 3. Each output is connected to an LED. The result is that the 16 LEDs turn on sequentially as the counter counts. *Id.*

The combination of these two patents is very similar to the operation of the circuit in the '858 Patent. Indeed, the Examiner contended that it would have been obvious to turn on a sequential lighting circuit like that of Heminover using the switch/logic gate arrangement in MacMillan, and that use of an OR gate, versus the "XOR" gate of MacMillan, was merely a matter of design choice. SOF, ¶ 4 (citing SOF, Exh. F , 1/9/98 Office Action, at 3-4). In response to the rejection, Cobra replaced the rejected claim, which recited a general circuit, with new claim 10 (corresponding to issued patent claim 9) that recited a *very* specific circuit. *See* SOF, at ¶ 5 (citing SOF, at Exh. G, 1/30/98 Amendment, at 6-8). Cobra argued that the new

---

[6]    The decoder at issue is a circuit that receives a binary number as input and 'decodes' it to turn on the particular output signal that corresponds to the numeric value of the input.

claim 10 was different from the prior art (including Heminover) because "[t]he *essential elements* distinguishing the present invention from the teachings of the cited art remain in claims 8 and 10, *so that the decoder of Heminover is not required.*" *Id.* (citing SOF, at Exh. G, 1/30/98 Amendment, at 9) (emphasis added). In this way, Cobra emphasized the extraordinarily narrow scope of its invention, because Cobra distinguished the invention (of issued claim 9), which uses a two-bit counter with four specially connected AND gates configured to decode the count and turn on one of four outputs, from the decoder of Heminover, which responds to output from a four-bit counter by turning on one of 16 outputs.

Relying on the detailed circuit configuration required by the claims, the Examiner allowed the patent, explaining that "the prior art does not fairly teach a lighted shoe apparatus comprising the claimed logic circuit for energizing a plurality of light emitting elements to illuminate in a given sequence, *especially including the specific arrangement of each components [sic] in the claimed logic circuitry.*" SOF, ¶ 6 (citing SOF, Exh. H, 5/15/98 Notice of Allowability, at 3) (emphasis added).

### First Reexamination

In 2002, after the '858 Patent was issued, a third party submitted an *Ex Parte* Reexamination request to the Patent Office (the "First Reexamination"). The Patent Office ordered the reexamination because it found substantial issues of patentability of claims 1-10 in view of: (a) Patent No. 5,903,101 to Garner; and (b) various combinations of Garner and Patent Nos. 5,381,615 to MacMillan, Patent No. 4,161,018 to Briggs, and Patent No. 4,227,251 to Kazama. *See* SOF, ¶ 7 (citing SOF, Exh. I, 7/11/02 Order Granting Reexamination).

In response to the Reexamination order, Cobra argued its patent was different from the cited prior art based on the claimed OR gate in its patent. Cobra stated:

> [The] MacMillan [reference] *does not teach the use of an OR gate*, but rather discloses an Exclusive-OR gate, which is inherently different and in this instance operates entirely differently from an OR gate.
>
> ....
>
> It is noted that *neither* [the] MacMillan, Briggs, nor Kazama, et al. [references] *teach the use of an OR gate.*
>
> ....
>
> And even if Requestor tries to argue that any of these references does somehow teach or suggest an OR gate, it is noted that none of them teaches or suggests an OR gate controlling a clock. *The Stone* ['858 Patent] *independent claims do recite activating and reactivating a clock with an OR gate ... [and] this limitation, found in all of the Stone dependent claims*, is not shown in the cited art.

SOF, ¶ 8 (citing SOF, Exh. J, Statement of Patent Holder, at 4-6) (emphasis added).

Cobra also argued that its patent was different from the prior art based on the claimed AND gates. Specifically, Cobra argued that AND gates in the prior art "do not combine outputs of a counter that provide counted Boolean numbers, while the <u>Stone</u> ['858 Patent] claims indicate combining Boolean sequences from a plurality of counter outputs with an AND gate to control the illumination of the lights." SOF, ¶ 9.

The Patent Office determined that the '858 patent claims were patentable over the cited art, and specifically explained that the prior art Garner patent (while teaching almost everything in the claimed circuit) did not teach "connecting a plurality of AND gates, including a counter controlling AND gate connected to the first counter" as specifically recited in the '858 patent claims. *See* SOF, ¶ 10 (citing SOF, Exh. K, 3/25/03 Reasons for Patentability).

### Second Reexamination

In 2008, a third party again sought reexamination of the '858 Patent (the "Second Reexamination"). The Patent Office granted the reexamination and rejected the claims (including asserted claim 9) based on a combination of references, including the Garner patent, Patent No. 5,680,718 to Ratcliffe and a "Student Manual" disclosing a decoder. *See* SOF, ¶ 11.

Throughout the reexamination, Cobra distinguished its invention from circuits disclosed in the prior art by emphasizing whether claimed circuit components were directly connected to the OR gate, as opposed to being indirectly connected with components in-between.

First, and of particular relevance is the cited Ratcliffe patent, which discloses a circuit with a switch that is connected to an OR gate input *indirectly* because it has an intervening 'flip-flop' (a simple type of memory circuit) in between the switch and OR gate. *See* SOF, ¶ 12 (citing SOF, Exh. M, Ratcliffe patent & SOF, Exh. N, annotated version). To distinguish the '858 Patent claims from Ratcliffe, Cobra argued that "[t]he '858 patent circuit switch connects *directly* to the OR gate, and the '858 OR gate turns on the clock." *See* SOF, ¶ 13 (quoting SOF Exh. O, April 13, 2009 Amendment, at 8) (emphasis added).

Likewise, after an Examiner interview, Cobra agreed to amend claim 9 to require that the clock input terminal be "logically directly" connected to the output of the OR gate so that the claims would be allowed. Contrary to Cobra's statement that the amendment to claim 9 was "solely for the purposes of clarification, and not to distinguish any prior art," *see* SOF, ¶ 19, the

Examiner's summary of the interview stated that the parties discussed "clarifying the language of the claims *to avoid the prior art of record and put the case in condition for [allowance]*."  SOF, ¶ 15 (quoting  SOF, Exh. Q, 10/4/10 Examiner Summary of Interview) (emphasis added); *see also id.* ¶ 16 (citing SOF, Exh. R, Notice of Intent to Reissue, at 5).  The Examiner's position is consistent with the repeated rejection of claim 9 over the prior art before this amendment.

### C.  Accused Products: The BCNY Circuit

All of the Accused Products include integrated circuits with the following identifying stamps: OBLIH; IP2P and IP2M.  SOF, ¶ 40.  Except for the type of switch used, OBLIH, IP2P and IP2M marked circuit boards have the same circuit structure and operate in the same manner and will be referred to herein as the "BCNY circuit."  SOF, ¶ 40.   A simplified diagram showing the structure and operation of the BCNY circuit in the Accused Products is shown below:[7]



Simplified BCNY Circuit Diagram

Among the many differences between the circuit claimed in the '858 Patent and the BCNY circuit, is that the BCNY circuit does not connect the switch (directly or indirectly) to an OR gate.  It also does not have a second counter that counts how many times a first counter, and thus the LED pattern, has cycled.  Further, the BCNY circuit totally lacks the plurality of AND gates connected between a two-bit counter and the LEDs.

---

[7]      A simplified mapping of the diagram components to the detailed circuit diagrams produced in discovery is set forth in Composite Exhibit **D**, which is being filed under seal.

With reference to the simplified diagram above, the BCNY circuit is turned on in response to a switch and uses a clock and counter as part of the flashing circuitry. The clock is turned on by the output of a NOR gate. A control circuit sits between the switch and the NOR gate and contains memory elements and other circuit components configured so that the input to the NOR gate, and so the clock, will stay on for a period of time even after the switch is opened.

The pulses output by the clock are counted by the counter, which outputs a 7-bit binary number sequentially counting from zero to 127. The 7-bit binary number from the counter (output on signals $A_1$ - $A_4$ and SEC1, SEC2, and SEC4) is used as an address to select one of 128 LED lighting patterns stored in a Read Only Memory (ROM), where the ones and zeros in each pattern indicates which corresponding LEDs should be on or off. When the circuit is running, the ROM decoder retrieves the particular stored pattern corresponding to the value of the 7-bit count and outputs that pattern on data lines D1 through D7. As the count increases, different patterns are retrieved from the ROM.

Lines D1 through D7 are connected to the corresponding inputs of seven LED-controlling NOR gates. The second input of each of the NOR gates is the "turn on" or "enable" signal. When the enable signal is on, the LED lights attached to the output of the NOR gates are turned on or off depending on the value of the particular data pattern retrieved from the memory. Thus, in summary, the BCNY circuit generates sequential memory addresses for the ROM by counting the clock ticks and then uses the *contents* of the memory at those addresses to control which LEDs are on and off for each count. Finally, rather than relying on a second counter to determine when to reset the system, the BCNY circuit is reset when a specific output occurs from its single counter, after which the clock is stopped and the counter and other circuit components are reset. In one example, the circuit is reset when signals $A_2$, $A_3$, SEC1 and SEC2 reach a predetermined value.

### D. Cobra's Claims for Damages

Cobra is claiming a per unit reasonable royalty for each Accused Product, and seeks damages starting from January 1, 2003. *See* Plaintiff's Revised Suppl. Rule 26(a) Disclosures, at 1-2 (DE 214)..

## III.   ARGUMENT

### A. Law on Summary Judgment

"Summary judgment is as appropriate in a patent case as it is in any other type of case."

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990).

Referring to the Federal Rules of Civil Procedure, the Supreme Court stated "Rule 56(c)

provides that the trial judge shall … grant summary judgment if there is no genuine issue as to

any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### B.  Law of Infringement

An infringement analysis involves a two-step process.   First, the court first determines

the meaning of disputed claim terms.  Second, the Court compares the accused device to the

claims as construed. *Markman v. Westview Instrs, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*,

517 U.S. 370 (1996).  This Court construed the claims as a matter of law for the terms of claim 9,

and there is no question of fact about the operation of the Accused Products.  Therefore, only a

comparison of the properly construed claims needs to be made against the Accused Products.

Infringement can be either literal or under the doctrine of equivalents. To find literal

infringement, each limitation of the claim must be present in the accused device.  Any deviation

from the claim precludes a finding of literal infringement.  *Cole v. Kimberly-Clark Corp.*, 102

F.3d 524, 532 (Fed. Cir. 1996).

The essential inquiry under the doctrine of equivalents is whether "the accused product or

process contain[s] elements identical or equivalent to each claimed element of the patented

invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, (1997).  "An

element in the accused product is equivalent to a claim limitation if the differences between the

two are `insubstantial' to one of ordinary skill in the art." *Eagle Comtronics, Inc. v. Arrow*

*Comm'n Labs., Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002) (citing *Warner-Jenkinson*, 520 U.S. at

40); *see also Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605 (1950).  A plaintiff

can prove equivalence by showing on a limitation-by-limitation basis that the accused product

performs substantially the same function in substantially the same way with substantially the

same result as each claim limitation of the patented product. *Eagle Comtronics*, 305 F.3d at

1315 (quoting *Graver Tank*, 339 U.S. at 608); *see also Warner-Jenkinson*, 520 U.S. at 39-40.

However, there are two important limitations on the doctrine of equivalents. First, a court

may not apply the doctrine of equivalents where so doing would effectively eliminate a claim

element in its entirety. *Warner-Jenkinson*, 520 U.S. at 29; *Carnegie Mellon Univ. v. Hoffmann-*

*La Roche, Inc.*, 541 F.3d 1115, 1129 (Fed. Cir. 2008).  Second, "[a]rguments made voluntarily

during prosecution may give rise to prosecution history estoppel if they evidence a surrender of subject matter." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki*, 234 F. 3d 558, 568 (Fed. Cir. 2000). Thus, actions by the patentee, including claim amendments and arguments made before the Patent Office, may give rise to prosecution history estoppel. *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1376-77 (Fed. Cir. 1999). "Prosecution history estoppel precludes a patentee from obtaining under the doctrine of equivalents coverage of subject matter that has been relinquished during the prosecution of its patent application." *Id.* at 1376.

### C. The BCNY Circuit Does Not Infringe the '858 Patent

The Accused Products do not infringe the '858 patent at least because they lack the required: (1) "OR gate" and direct connection to the switch; (2) the "cycle restarting means," and (3) the plurality of AND gates and required connections to the counter and LEDs.

#### 1. The Switch is Not Directly Connected to an "OR Gate

The claim requires an "OR gate" and "a ground wire containing a control switch connected to one said OR gate input terminal." It also requires "a clock having a clock input terminal connected to said OR gate output terminal." This Court construed an OR gate as "a specific type of logic circuit where the output from the circuit is 'off' or 'false' whenever all inputs to the circuit are 'off' or 'false,' and where the output from the circuit is 'on' or 'true' where at least one of the inputs from the circuit is 'on' or 'true.' The OR gate also has input terminals and an output terminal." 6/18/08 Order, at 6 (DE 281).

There is no literal infringement because the Accused Products do not have an OR gate with an input connected to the switch and an output connected to the clock as required by claim 9. *See Cole*, 102 F.3d at 532. Instead, in the BCNY circuit, the switch is connected to a NAND gate while the clock enable signal is generated by an entirely separate NOR gate. Moreover, the NAND gate and the NOR gate are separated from each other by a block of complex logic that performs various intermediate functions.

There is also no infringement under the Doctrine of Equivalents because Cobra is precluded from arguing that either the NOR gate or the NAND gate in the BCNY circuit is equivalent to the claimed OR gate because Cobra repeatedly relied on the expressly claimed "OR gate" to distinguish the claimed invention from the prior art in the First Reexamination *Id.; Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1583 (Fed. Cir. 1995) ("Clear assertions made during prosecution in support of patentability, whether or not actually required to secure

12

allowance of the claim, may ... create an estoppel.").

Second, there is no infringement because the required connections are absent. During the Second Reexamination, Cobra expressly distinguished the claims over the prior art Ratcliffe patent (Exh. **M**) by arguing that "[t]he '858 patent circuit switch connects *directly* to the OR gate, and the '858 OR gate turns on the clock." SOF, at ¶ 13 (quoting SOF, Exh. P, 4/13/09 Amendment) (emphasis added). Cobra thus emphasized that the claimed OR gate *both* was (i) directly connected to the switch, and (ii) was the same gate that turned on the clock.

If Cobra contends the NOR gate is equivalent, there is no infringement because there is no *direct* connection from the switch to the NOR gate as Cobra argued. Instead, as in the distinguished Ratcliffe patent, the BCNY circuit has intervening components between the switch and the NOR gate controlling the clock. This is shown in annotated figures comparing the distinguished Ratcliffe circuit and the BCNY circuit, which are being filed under seal as Exh. **E**.

Likewise, if Cobra contends instead that the NAND gate that receives the switch input is equivalent to the claimed OR gate, there is also no infringement because the output of the NAND gate is not connected to the clock as the claim requires (much less "logically directly" connected, as per reexamination-amended claim 9), but instead connected to a complex block of logic that itself is connected to a separate gate (the NOR gate) which generates the enable signal for the clock.

Because Cobra clearly and unambiguously argued that the claims require a "direct" connection between the switch and the OR gate, as opposed to an indirect connection (as in Ratcliffe and the BCNY circuit), and emphasized that the single claimed OR gate both (i) received the switch input and (ii) output the enable for the clock, there is no infringement under the Doctrine of Equivalents. *Seachange Intern., Inc. v. C-COR, Inc*, 413 F.3d 1361, 1372-73 (Fed. Cir. 2005) ("Where an applicant argues that a claim possesses a feature that the prior art does not possess in order to overcome a prior art rejection, the argument may serve to narrow the scope of otherwise broad claim language); *Ekchian v. Home Depot, Inc*., 104 F.3d 1299, 1304 (Fed. Cir. 1997) ("[S]ince, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection.")

Accordingly, for these reasons, the claim is not infringed.

### 2. The BCNY Circuit Does Not Have a "Cycle Restarting Means"

The claim requires a "cycle restarting means". As detailed further below, this requires the claimed circuit to restart its lighting cycle (as controlled by a first counter) a certain number of times as measured by a second counter and, when the number of times to restart the cycle has been reached (e.g., four times), the circuit is reset and stops. The BCNY circuit does not restart a first counter's cycle as required and does not have the required second counter. Therefore, there is no infringement for this further reason.

The claimed "cycle restarting means" is in "means-plus-function" format pursuant to 35 U.S.C. § 112 ¶ 6. Literal infringement of a means-plus-function claim limitation requires that the accused device perform the identical function recited in the claim using structure that is identical or equivalent to the corresponding structure in the specification. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1320 (Fed. Cir. 2003). Once the relevant structure in the accused device has been identified, a party may prove it is equivalent to the disclosed structure by showing that the two perform the identical function in substantially the same way, with substantially the same result. *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000).

> This Court provided the following construction for the "cycle restarting means:"
>
> The function of the cycle restarting means is to *restart the cycle* so that a signal will be generated to reactivate the clock such that the counting and lighting cycle begins again. *The cycle is a complete count of all the numbers that can be output from the first counter* and the corresponding flashing pattern generated by the plurality of And gates.
>
> …
>
> [The structure is] *the second counter* (Fig. 2, 74), which is connected at its input terminal by the output terminal of and driven by the output from the counter controlling And (Fig. 2, 58), which second counter is connected by its output terminals to the input terminals of the cycle restarting And gate (Fig. 2, 76), and which cycle restarting And gate is connected by its output terminal to the second of the input terminals of the Or gate. Fig. 2, 32, and equivalents thereof. *See* Col. 6, lines 35-47.

6/18/08 Order, at 10-11 (DE 281) (emphasis added).

The BCNY circuit simply does not perform the claimed function of restarting a "cycle" of complete counts from the first counter so that the counting and lighting cycle repeat several times after the switch is activated. Instead of restarting the first counter cycle several times (after a complete count of all the numbers that it can output), the BCNY circuit provides an extended

lighting sequence in an entirely different way by using part of the cycle from a single large counter to reference (via the seven outputs from the counter) up to 128 lighting patterns stored in a ROM. Cobra's own expert admitted that the BCNY circuit does not restart its cycle but instead runs through its cycle once and does not repeat:

> Q.   So it is done, you activate the circuit. It flashes through once and does not repeat, right?
> A.   That's correct.

Deposition of John ("Jack") Oltman, at139: 2-13; SOF, at ¶ 31.

Moreover, the BCNY circuit does not even have the required second counter. As Cobra's expert testified, the BCNY circuit either does not have the required second counter, or if it has a second counter elsewhere in the circuit, it does not use it as required by the claim, but instead uses it in a *different way* (and so cannot be equivalent to the claimed second counter):

> Q.   And in your view of the BCNY circuit the counter, the counter and the counter controlling AND gate is actually that first original counter, right? *There is not a second counter?*
> A.   I will say that there is -- *it is almost like a counter* right there is [sic] these sequence once that allow it to go. State that allows it to run a second sequence. They are very close. *But no,* I would not say there is the same -- the -- you have almost learned it from Stone. *But you have used in a different way.*

*Id.* at 193: 9-21 (emphasis added); SOF, at ¶ 32.

Therefore, there is no literal infringement because the Accused Products (1) do not perform the required function of restarting the cycle of a first counter as per the Court's construction, and (2) do not have the required second counter or - as admitted by Cobra's expert - an equivalent thereof.

There is also no infringement under the Doctrine of Equivalents because: (a) the Accused Products do not have a second counter or an equivalent, and (b) "not cycling" cannot be equivalent to cycling without completely vitiating the requirement to "cycle".[8] *See Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (doctrine of equivalents barred

---

[8]   Analysis of equivalents is the same under both section 112, ¶ 6 (means-plus-function) and the Doctrine of Equivalents. A structure that fails the section 112, ¶ 6 test also fails the Doctrine of Equivalents test for the same reasons. *Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F. 3d 1352, 1364 (Fed. Cir. 2000); se*e also Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1309 (Fed. Cir. 1998) (accused structure did not infringe under the doctrine of equivalents for same reason as no literal infringement under § 112, ¶ 6).

because "[t]o hold that 'unmounted' is equivalent to 'mounted' would effectively read the 'mounted on' limitation out of the patent").  Accordingly, the claim is not infringed for these additional reasons.

### 3. The BCNY Circuit Does Not Have a "Plurality of AND Gates" Connected Between the LEDS and a Two-Bit Counter

The circuit of claim 9 requires a "plurality of AND gates," including a "counter controlling AND gate," where each of the AND gate inputs is connected in parallel to two and only two counter outputs, and the AND gate outputs are connected to the light emitting elements. The BCNY Circuit does not infringe because it does not have any one of (i) the "plurality of AND gates", (ii) a "counter controlling AND gate", (iii) a "parallel" connection of the AND gate inputs to "both" the counter output terminals, (iv) a connection of AND gate output to each of the light emitting elements or (v) a counter with a two-bit output as the construed claim requires. Each of these points is addressed below.

This Court's construction of the "plurality of AND gates" requires that *"[t]here are at least two AND gates, one of which performs the function of controlling the second counter which is part of the cycle restarting means."* (6/18/08 Order, at 9) (DE 281) (emphasis added). The Court defined the function of the AND gate as "a logic gate with an output terminal that is 'on' or 'true' when all of its input terminals are 'on' or 'true,' and with an output terminal that is 'off' or 'false' when any one of its input terminals is 'off' or 'false.'" *Id.*

There is no literal infringement for the following four reasons.  First, as discussed above, the BCNY circuit does not have a second counter as claimed.  Therefore, by definition, there can be no counter controlling AND gate that "performs the function of controlling the second counter," as required.

Second, the BCNY circuit does not have AND gates connected to the outputs of the counter and driving the LEDs as claimed.  The claim requires that "[t]he AND gate input terminals for all of the AND gates [be] connected to the two first counter output terminals in parallel so that *each AND gate, including the 'counter controlling AND gate,' will receive each Boolean number which is output from the first counter* " *Id.* at 10.  The claim further requires that "*each of the light emitting elements is connected to a corresponding AND gate output terminal*." *Id.*  By contrast, the counter in the BCNY circuit has seven counter output signals ($A_0$, $A_1$, $A_2$, $A_3$, SEC1, SEC2 and SEC4) and these are not connected to AND gates, as required by the claim,

but instead are connected to the address inputs $A_0$ to $A_6$ of a ROM decoder. Cobra's expert admitted that the ROM in the BCNY circuit does not have the claimed AND gates:

> Q.   So assume that. If all you are limited to is literally AND gates, do you see AND gates so defined in Exhibit 10 [circuit diagram of the ROM for the Accused Products], a plurality of them that are used to light up or connected to LEDs?
>
> A.   I would say no.

Oltman Tr. 166: 24 –167: 4; *see also* SOF, at ¶ 36.

Third, in the BCNY circuit, each LED is connected to the output of a respective two-input NOR gate, and is not connected to an AND gate as claimed. Further, instead of receiving "each Boolean number which is output from the first counter" as the claim requires, each of these NOR gates receives a single input signal selected from one of the seven ROM output data lines $D_1$ through $D_7$. The second input to each of the NOR gates is an enable signal. SOF, at ¶ 39. To receive each number from the counter as the claim requires, each NOR gate would require seven inputs.

Fourth, while the BCNY circuit has a counter with seven bits of output ($A_0$, $A_1$, $A_2$, $A_3$, SEC1, SEC2 and SEC4), the claim is limited to a first counter with only two bits because of the claim's express reference to "both" counter outputs:

> [In view of the claim reciting] the plurality of And gates being connected to 'both' of the first counter terminals, and recognizing the rule of claim construction that effect is to be given to all terms in the claim, *it is apparent that the claim is limited to a first counter having two output terminals*. The Court recognizes that generally a preferred embodiment should not be read as a limitation on a patent claim. However, in this case, the limitation of the word 'both' is contained in the claim itself, and the preferred embodiment is consistent with the limiting language of the claim."

*See* 6/18/08 Order, at 8 (DE 281) (emphasis added).

There can also be no infringement under the Doctrine of Equivalents. As set forth above, the BCNY circuit does do not have the required "plurality of AND gates" or the required counter controlling AND gate. The absence of a claim element cannot be equivalent to its presence. *See*, *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir. 2006) ("application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.")

In addition (and more specifically), the BCNY circuit does not have a plurality of AND

gates where each receives "each Boolean number which is output from the first counter."  During the First Reexamination, Cobra distinguished the prior art based on the claimed AND gates between the counter and the LEDs and the "combining" of the outputs of the counter by the AND gates:

> Furthermore, the And gates of MacMillan, Briggs or Kazama, et al. do not *combine* outputs of a counter that provide counted Boolean numbers, while the Stone claims indicate combining Boolean sequences from *a plurality of counter outputs with an And gate* to control the illumination of lights.

SOF, at ¶ 9 (quoting SOF, Exh. J, Patent Owner Statement, at 6) (emphasis added).  The clear and definite argument distinguishing the claimed invention over the prior art counter/decoder combination of MacMillan based on the required use of AND gates to combine the outputs from the counter precludes Cobra from arguing that a circuit that *does not* combine the counter output using AND gates, such as the BCNY circuit, is equivalent to the claimed circuit.  *Texas Instruments Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1174 (Fed. Cir. 1993) (arguments made during prosecution that emphasized one feature of the invention estopped the patent holder from asserting that a device lacking that feature infringed the patent under the doctrine of equivalents).

Further, the counter in the BCNY circuit, which has more than two output bits, cannot be equivalent to a two output counter, as required by the construed claim, because this would vitiate the express requirement in the claims that the AND gates be connected to "*both*" outputs of the counter, and the Court's construction limiting the counter to two bits.  *See Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1361-62 (Fed. Cir. 2005) (reversing finding of infringement where claim included "slidably" mounted limitation and accused product's support member was "rotatably" mounted because the district court's finding "had the effect of entirely vitiating the `slidably mounted' limitation").

Accordingly, the claim is not infringed for these further reasons.

**D.    Cobra Is Not Entitled To Damages Accruing Prior to Reissuance of the '858 Patent.**

BCNY also should be granted partial summary judgment dismissing Cobra's claim for damages prior to issuance of the second reexamination certificate because Cobra substantively narrowed claim 9 of the '858 Patent by expressly limiting the type of connection there could be between the clock input terminal and the OR gate output terminal.

It is well settled that reexamined claims may only be enforced during the period between the date of issuance of the original claims and the date of the issuance of the reexamined claims if the original and reexamined claims are "substantially identical." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998); *see also* 35 U.S.C. §§ 252 & 307(b). Reexamined claims are "substantially identical" to the original claims only if they are "without substantive change" and any changes made do not affect the scope of the original claims. *Seattle Box Co. v. Industrial Crating & Packing*, 731 F.2d 818, 827-828 (Fed. Cir. 1984) (emphasis added); *Bloom Eng'g Co., Inc. v. North American Mfg. Co., Inc.*, 129 F.3d 1247, 1249-50 (Fed. Cir. 1997). If the reexamined claims contain substantive changes, the patentee is barred from recovering damages for infringement during the period prior to issuance of the reexamination certificate. *See Laitram*, 163 F.3d at 1346; *Bloom Eng'g*, 129 F.3d at 1249-51; *Neupak, Inc. v. Ideal Mfg. & Sales Corp.*, Case No. 01-1368, 01-1389, 41 Fed. Appx. 435, 442, 2002 WL 1363568 (Fed. Cir. June 24, 2002).

Determining whether reexamined claims contain a substantive change is a question of law, which must be analyzed in light of "the claims of the original and reexamined patents in light of the particular facts, including the prior art, prosecution history, other claims and other pertinent information." *Laitram*, 163 F.3d at 1347; *see also Westvaco Corp. v. International Paper Co.*, 991 F.2d 735, 741 (Fed. Cir. 1993). [9]

During the Second Reexamination, Cobra expressly narrowed claim 9 to require that the clock input terminal be "logically directly" connected to the OR gate output terminal. [10] SOF, at ¶ 11-17. This is a substantive and narrowing amendment because it excludes from the claim circuits where the clock input terminal is indirectly connected to the OR gate output terminal, and not "logically directly" connected as the amended claim requires.

This amendment was made to overcome the prior art rejections. Claim 9 of the '858

---

[9]     The recoverability of pre-reexamination damages may properly be decided on summary judgment because whether changes to amended claims are substantive is a question of law. *See e.g. University of Va. Patent Found. v. General Electric Co.*, Case No. 08-00025, 2010 WL 4502599, at *24 (W.D. Va. Nov. 9, 2010) (granting partial summary judgment on defendant's liability prior to reexamination certificate).

[10]     The "logically direct[]" connection between the OR gate and the clock is separate from the direct connection between the switch and the OR gate argued during the Second Reexamination and discussed in Section III(C)(1), above.

Case No. 0:05-cv-61225-KAM

Patent was initially rejected in the Second Reexamination as being obvious in view of the Garner Patent and in view of other prior art. *See* SOF, ¶ 14 (citing Exh. P, 9/25/90 Reexam. Final Office Action, at 4). Telephonic interviews were subsequently held with the patent Examiner on September 22, 27 and 28, 2010, during which the Garner patent was specifically discussed and it was agreed that the language of the claims would be amended to gain its allowance. SOF, ¶ 15. When the patentee makes a substantive amendment in response to a rejection during reexamination, there is an "irrebuttable presumption that the original claim was materially flawed." *Bloom Eng'g*, 129 F.3d at 1249-51.

While Cobra argued during the Second Reexamination that this amendment was "solely for the purposes of clarification, and not to distinguish any prior art," (SOF, ¶ 19), the fallacy of this self-serving statement is exposed by the Examiner's own summary of the interview, which explains that the amendment was "*to avoid the prior art of record and put the case in condition for [allowance]*." SOF, ¶ 15 (quoting Exh. Q, Examiner Summary of Interview) (emphasis added). The Examiner further emphasized the substantive nature of this amendment by explaining that:

> Independent claim 9 is allowable because of the fact that none of the references of record disclose or teach along or in combination the limitation: "a clock having a clock input terminal **logically directly connected to said Or gate output terminal** for generating a step output signal when said Or gate output is on and having a clock output terminal" in combination with "OR gate, a first counter, a plurality of And gates and cycle restarting means" as called for in amended claim 9.

SOF, ¶ 16 (quoting SOF, Exh. R, 10/4/2010 Notice of Intent to Reissue Reexam. Certif., at 5) (emphasis in original).

Because the amendment to claim 9 made during the Second Reexamination of the '858 Patent is substantive, the Court should grant BCNY partial summary judgment dismissing Cobra's claim for damages prior to January 11, 2011, the date of issuance of the second reexamination certificate.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant BCNY's motion for summary judgment.

Case No. 0:05-cv-61225-KAM

Dated: August 30, 2011

Respectfully submitted,

By: /s/ Julie E. Nevins
      Julie E. Nevins, Esq.
      John F. O'Sullivan, Esq.
      HOGAN LOVELLS US LLP
      1111 Brickell Avenue, Ste. 1900
      Miami, FL 33131
      Phone: (305) 459-6500
      Fax: (305) 459-6550

      Mitchell S. Feller
      Admitted *Pro Hac Vice*
      Sobel & Feller LLP
      444 Madison Ave., 17th Fl
      New York, NY 10022
      Telephone:   212-308-0600
      Facsimile:   212-308-0611
      msfeller@sobelfeller.com

      *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 30, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy was served this day on all counsel authorized to receive Notice of Electronic Filing generated by CM/ECF.

By:  /s/ Julie E. Nevins

21