UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:05-cv-61225-KAM

COBRA INTERNATIONAL, INC.,
a Florida corporation,

    Plaintiff,

vs.

BCNY INTERNATIONAL, INC., a New
York corporation, et al.,

    Defendants.

_____/

### ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

This matter is before the Court on Plaintiff's Motion for Leave of Court to Amend Complaint (DE 573). The motion is ripe for review. For the following reasons, the Court denies the motion.

**I. Background and Procedural History**

More than ten years ago, Cobra International, Inc. ("Cobra") brought this action against Defendants for alleged infringement of U.S. Patent No. 5,821,858 ("the '858 patent"), which concerns a lighted slipper. (DE 1.) Originally, Allan J. Stone was named as the sole inventor of the '858 patent. As in its prior complaints, in its most recent complaint Cobra alleged that the '858 patent was issued to Stone, who became "the owner" of the patent, and that Stone assigned the patent to Cobra. (DE 48 ¶¶ 10–11.)

On December 16, 2005, the Court entered a scheduling order that set March 30, 2006 as the deadline for amending pleadings and adding parties. (DE 21 at 2.)

On September 21, 2014, the Court granted Defendants' Renewed Motion for Summary Judgment of Patent Invalidity for Lack of Inventorship because Defendants established that Stone was not the sole inventor of the '858 patent. (DE 533 at 14.) The Court found that the subject matter of the '858 patent's claims "is a slipper illuminated through the use of a specific electrical circuit." (DE 533 at 13.) To develop this lighted slipper, Stone traveled to China and engaged unidentified Chinese technicians to develop prototypes. (DE 533 at 6.) When he received an adequate prototype, Stone brought it to the United States and obtained the '858 patent, which listed Stone as the sole inventor. (DE 533 at 7.) Because the undisputed facts showed that Stone did not conceive of the idea of the electrical circuit used in the slipper, did not participate in the design of the circuit, and did not give the makers of the prototype any direction relative to the circuit, the Court held that Stone was not the sole inventor of the subject matter of the '858 patent. (DE 533 at 13.) While the Court held that Stone was not the sole inventor, it made no ruling on who the co-inventor (or co-inventors) was.

In its response to Defendants' motion for summary judgment, Cobra maintained that Stone was properly named as the sole inventor, but Cobra alternatively requested leave to amend the '858 patent under 35 U.S.C. § 256 to add "the unnamed Chinese inventor" as a joint inventor.[1] (DE 509 at 17.) Cobra claimed that even if the Chinese technician were a joint inventor, "Stone would still have standing to sue as a joint inventor." (DE 509 at 17.) Thus, to the extent it did not prevail on its claim that Stone was the sole inventor, Cobra presented the issue to the Court as a simple matter of correcting the patent under 35 U.S.C. § 256. (DE 509 at 18) ("In the present case, even if Allen [sic][2]

---

[1] As Stone engaged multiple Chinese technicians for a prototype, it is not entirely clear from the record that there is only one co-inventor.

[2] In its filings, Cobra inconsistently spells Stone's first name as "Allan," "Allen," or "Alan." (*E.g.*, DE 1 at 1; DE 509 at 18; DE 537 at 1.) The Court assumes that the spelling used by the United States

2

Stone was a joint inventor rather than the sole, the patent could be corrected to reflect just that."). Notably, Cobra's response framed the issue solely as one of correcting inventorship and did not say anything regarding ownership.[3] Cobra never suggested that it would have to amend its complaint in addition to correcting the patent.

Based on Cobra's request, the Court held that Cobra "must be allowed to correct inventorship pursuant to 35 U.S.C. § 256 in order to avoid a finding of patent invalidity." (DE 533 at 14.) On October 21, 2014, Cobra proposed a scheduling order for how it would proceed following the Court's summary judgment ruling. (DE 537.) Cobra's proposal did not contain any reference to amending its complaint, adding parties, or extending the deadline to do so. On December 10, 2014, the Court administratively closed this case to allow Cobra an opportunity, as it requested, to apply for a certificate of correction with the United States Patent and Trademark Office ("USPTO") regarding inventorship of the '858 patent. (DE 550.) To ensure that Cobra moved expeditiously to correct the patent, the Court required Cobra to file a status report by April 9, 2015. (DE 550 at 7.)

In its April 9, 2015 status report, Cobra advised that it located the Chinese co-inventor and filed a pending request for a certificate of correction with the USPTO.[4] (DE 551.) The status report

---

Patent and Trademark Office, "Allan," is the correct spelling. (DE 565-1 at 2.)

[3] In their reply, Defendants briefly addressed Cobra's alternative request to correct inventorship. Defendants noted: "Correction of inventorship, even if possible, would also raise significant ownership and standing issues. Each inventor on a U.S. patent is a co-owner of the whole. Correcting inventorship to remove Stone and add the proper inventor would likely mean Cobra had no remaining ownership of the patent and no standing to continue to assert the patent in Court." (DE 526 at 13 n.8.)

[4] Cobra stated that "the Chinese technician determined by the Court to be co-inventor was located." (DE 551 at 2.) Cobra misstated the facts. The Court determined that Stone was not the sole inventor, but it never made any determination as to who the co-inventors were.

contained little information and did not identify the alleged Chinese co-inventor nor describe what documents Cobra was filing with the USPTO in support of its request for a certificate of correction. Also, in its status report Cobra did not state any intention to amend its pleading, add a party, or seek an extension of the deadline to do so.

After Cobra filed its status report, Defendants filed a "response" to the status report and moved to dismiss this case on the ground that Cobra does not have complete ownership of the '858 patent and failed to join its co-owners as plaintiffs.[5] (DE 554; DE 555.) While previously the issue was only one of the correct inventors being named on the patent, Defendants discovered that Cobra also was not the sole owner of the '858 patent. Defendants learned that Cobra recorded with the USPTO a March 7, 2015 assignment[6] executed by Lin JinXiang assigning his alleged rights in the patent to Pangaea Global Enterprises, LLC ("Pangaea").[7] (DE 554 at 1–2., 5; DE 554-4.) This assignment meant that Cobra did not have complete ownership of the '858 patent. Thus, Defendants argued, regardless of whether the patent was corrected to list all the inventors, the complaint had to be dismissed because Cobra failed to join its co-owners as plaintiffs.

Cobra's response to Defendants' motion to dismiss for failure to join co-owners improperly conflated inventorship and ownership issues. Cobra maintained this Court's ruling that Cobra could administratively correct inventorship meant that the Court had already rejected Defendants'

---

[5] When a patent is co-owned, the Federal Circuit requires all co-owners to be joined as plaintiffs in an action for patent infringement. *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1467–68 (Fed. Cir. 1998).

[6] The purported assignment stated Lin JinXiang has "been designated by a United States District Court as a co-inventor of the invention." (DE 554-4 at 4.) This was an incorrect statement. The Court previously held that Stone was not a sole inventor; it made no ruling on who the co-inventors were.

[7] Curiously, Pangaea was formed only three days earlier. (DE 554 at 5; DE 554-5.)

argument regarding Cobra's failure to join its co-owners as plaintiffs. (DE 556 at 4–5.) For example, Cobra argued that "by ruling that Plaintiff had the right to file for correction, this Court clearly rejected Defendants' argument that the absence of a co-inventor's name on the original application is fatal to the present action." (DE 556 at 5.) But Defendants' argument was that Cobra failed to join all *co-owners* as plaintiffs in its *complaint*, which was a separate issue from the failure to list all *co-inventors* on the *patent application*.[8] Most relevant here, in its response Cobra never argued in the alternative that it should be allowed to add co-owners nor otherwise mention any intention to amend its complaint or add parties.

On September 28, 2015, Cobra advised the Court that it obtained a certificate of correction from the USPTO. (DE 565.) The certificate of correction lists Allan J. Stone and Lin JinXiang as the inventors of the '858 patent. (DE 565-1 at 2.) Again, in its status report Cobra never evinced any intent to amend its complaint or add a party.

On September 29, 2015, the Court ordered the parties to advise "the Court of their respective positions on whether this case should be reopened and, if so, how this case should proceed." (DE 566.) On October 8, 2105, Defendants responded that the case should be dismissed for Cobra's failure to join its co-owners as plaintiffs. (DE 567.) One day later, Cobra advised that the case should be reopened and (again improperly conflating the inventorship and ownership issues) stated its position that the USPTO's grant of a certificate of correction rendered Defendants' motion to dismiss moot. (DE 568 at 2.) Cobra also stated that the Court should order the parties to confer on discovery and scheduling issues and then file a joint status report. (DE 568 at 3.) Yet again, Cobra did not

---

[8] "Questions of patent ownership are distinct from questions of inventorship." *Ethicon*, 135 F.3d at 1456.

express any intent to amend its complaint or add parties.

On October 13, 2015, the Court reopened the case and set a hearing on Defendants' motion to dismiss and the other issues raised by the parties. (DE 569.) The hearing was held on October 27, 2015. Despite resisting Defendants' motion to dismiss in at least three filings (DE 556; DE 563; 568), at the hearing Cobra appeared to concede that it needed to do join its co-owners, and therefore its complaint was presently deficient. (DE 571 at 3:3–4:7, 6:1–7:2.) After the Court pressed Cobra's counsel on why it had not yet sought to amend its complaint, Cobra said that it planned on moving to add a party "very soon":

> THE COURT:  Okay. So it's been a little over a month.
>      All right. So what is your intention going forward, now that you have this co-inventorship matter resolved, at least as far as you're concerned?
> MR. VANTREESE: Well, at this point we would be adding a -- the plan going forward would be to add a co-plaintiff. We'd, you know, motion the Court to allow us to do that. We would put in the
> supporting documentation, including what's already been submitted.
>      At that point, defense counsel would have every opportunity to challenge that at that time, and it would be our position that that would be the appropriate time to do so.
> THE COURT: Okay. So just out of curiosity, you knew we were having this hearing today. I don't know when it was scheduled. I don't think it was scheduled that long ago. But you had the correction of the inventorship for over a month now. Any reason you didn't file a motion to get this thing rolling sooner? I mean, why are you waiting 'til after today to do it? Just curious.
> MR. VANTREESE: Well, I think we would have just gotten the certificate of correction within the last few weeks.[9] I don't think we got it immediately after it was done. We thought we'd -- I really didn't know what to expect at this status conference, what exactly was going to happen. But, you know, we plan on doing that very soon.
> THE COURT: So your intention is to file a motion to add the new co-inventor or his assignee --
> MR. VANTREESE: Yes.
> THE COURT: -- as a party plaintiff so you can proceed with the case? That's what

---

[9] Cobra filed its status report advising the Court of the certificate of correction on September 28, 2015, a month before the hearing.

>your intention is?
>MR. VANTREESE: Yes.
>THE COURT: Okay. All right. And you intend to do that relatively soon?
>MR. VANTREESE: Yes, very much expeditiously, Your Honor.

(DE 571 at 5:21– 7:6.)

Almost two weeks passed and Cobra still never moved to add a party or otherwise amend its complaint.[10] On November 9, 2015, given Cobra's silence, the Court granted Defendants' motion to dismiss for Cobra's failure to join its co-owners of the '858 patent. (DE 572.) Though the Court's dismissal was without prejudice, the Court noted that Defendants may have "objections to allowing Cobra to file a third amended complain in this decade-old suit." (DE 572 at 7.) Therefore, the Court declined to automatically grant Cobra leave to file an amended complaint and instead required Cobra to move for such leave so Defendants could have an opportunity to raise their objections. The Court also observed that because the deadline for amending pleadings and adding parties passed, Cobra would have to establish good cause to prevail on a motion for leave to amend.

On November 18, 2015, Cobra moved for leave to amend. (DE 573.) Together with its motion, Cobra submitted its proposed third amended complaint. Cobra seeks to add Pangaea as a co-plaintiff. (DE 573 at 7.) In its proposed third amended complaint, Cobra further alleges: "On September 15, 2015 this [sic] United States Patent and Trademark Office issued a Certificate of Correction for U.S. Patent 5,821,858 (the '858 Patent) adding Lin JinXiang as a co-inventor, who assigned his entire right and interests in the '858 Patent to Plaintiff Pangaea Global Enterprises, LLC." (DE 573 at 9.)

## II. Legal Standard

---

[10] Nor had Cobra withdrawn its opposition to Defendants' motion to dismiss despite effectively conceding at the hearing that it needed to add a party to fix its complaint.

Federal Rule of Civil Procedure 15(a)(2) provides a "liberal" standard for granting leave to amend a pleading. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (per curiam). Under Rule 15(a)(2), a Court should freely grant leave to amend when justice so requires, but such leave may denied for reasons such as undue delay, undue prejudice to the non-moving party, or futility of the proposed amendment. *Andrx Pharm., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir. 2005).

A scheduling order, however, "must limit the time to . . . amend the pleadings," and a deadline in a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(3)(A), (b)(4). A post-deadline motion for leave to amend is effectively also a motion to extend the deadline. It is thus well-established that "when a motion to amend is filed *after* a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused." *Sosa*, 133 F.3d at 1418 n.2 (emphasis added). To consider the liberal Rule 15 standard without first considering whether good cause is shown under Rule 16(b)(4) "would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Id.* at 1419.

Rule 16's "good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa*, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note). "In other words, good cause exists when evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline had passed." *Donahay v. Palm Beach Tours & Transp., Inc.*, 243 F.R.D. 697, 699 (S.D. Fla. 2007). Even if the basis for the amendment could not have been discovered until after the deadline had passed, to demonstrate diligence under Rule 16's good cause

8

standard the movant still must show that it was diligent in seeking the amendment once it became apparent that it could not comply with the scheduling order. *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 106 (D.D.C. 2005). If the court finds that the party seeking leave to amend lacked due diligence, then the good cause inquiry ends with a denial of the motion. *Sosa*, 133 F.3d at 1418; *Girard v. Aztec RV Resort, Inc.*, No. 10-62298-CIV, 2011 WL 7962612, at *2 (S.D. Fla. Oct. 4, 2011). "Moreover, even if the opposing party would not be prejudiced by the modification of a scheduling order, good cause is not shown if the amendment could have been timely made." *Ameritox, Ltd. v. Aegis Servs. Corp.*, No. 07-civ-80498, 2008 WL 2705435, at *2 (S.D. Fla. July 9, 2008). Because the good cause standard is "more stringent" than the Rule 15(a)(2) standard, "the likelihood of obtaining permission to amend diminishes drastically after the court enters a scheduling order with deadlines for amendments that have expired." *Donahay*, 243 F.R.D. at 699.

### III. Discussion

The Court finds that Cobra fails to show good cause for its proposed post-deadline amendment because Cobra has failed to show reasonable diligence in requesting leave to amend or add parties, or an extension of the time do so.

Under the most generous view, Cobra was on notice that it would have to amend its complaint to add co-owners as plaintiffs as early as September 22, 2014, when the Court held that Stone was not the sole inventor of the '858 patent.[11] This ruling should have alerted Cobra to the fact

---

[11] Cobra was arguably on notice that Stone was not the sole inventor, and therefore it was not a sole owner and needed to join co-owners, even earlier than the Court's summary judgment order. Without deciding the issue, for the purposes of this Order the Court gives Cobra the benefit of the doubt that it reasonably believed it would prevail on its argument that Stone was the sole inventor and Cobra was the sole owner of the '858 patent. But the Court's summary judgment order conclusively settled that issue in favor of Defendants. This Court's conclusion that from the issuance of the summary judgment order, at the latest, Cobra was on notice that it was only a co-owner, should not be

that it was not the sole owner. If Stone was not the sole inventor, he was also not the sole owner unless he had somehow acquired the ownership rights from the other co-owner or co-owners (*see* DE 572 at 3), which Cobra does not suggest occurred. Accordingly, at least as early as September 22, 2014, Cobra was on notice that it had only acquired a co-ownership interest from Stone. Cobra also knew that it had not otherwise acquired the remaining co-ownership interests.

As it is a basic tenet of patent law, Cobra also should have known that a plaintiff asserting an infringement action is required to join all co-owners of the patent as plaintiffs. *See Ethicon*, 135 F.3d at 1467–68. Furthermore, in reply to Cobra's alternative argument on summary judgment that it should be allowed to correct inventorship, Defendants actually alerted Cobra to the possibility that correcting inventorship could "raise significant ownership and standing issues." (DE 526 at 13 n.8.) In addition to the fact that Cobra already should have known that all co-owners are required to be joined as plaintiffs in a patent infringement action, Defendants' assertion put Cobra on actual notice of the potential ownership issues.

Thus, had Cobra exercised reasonable diligence, it would have sought leave to add co-owners as plaintiffs shortly after the Court granted Defendants' motion for summary judgment. At that time, Cobra knew or should have known that (1) it shared ownership of the '858 patent with at least one other co-owner, (2) all patent co-owners must join a patent infringement action, and (3) it was the sole plaintiff in this action. Cobra therefore knew or should have known its complaint was defective (i.e., in need of amendment). Even if Cobra was not aware of the identities of the co-owners at that time, it could have at least moved for an extension of the Court's deadline to add parties to allow it

---

construed to mean that co-ownership rights of others did not exist before the summary judgment order.

time to identify the necessary co-owners.[12] Despite knowing that it did not have sole ownership of the '858 patent, Cobra did not do so.

Cobra briefly advances two arguments regarding good cause.[13] Cobra argues that it could not comply with the March 30, 2006 deadline for amending the complaint and adding parties because it had already passed by the time the Court held that Stone was not the sole inventor.[14] Cobra also claims that it could not move to amend its complaint until after the USPTO issued the certificate of correction. The Court rejects both of these arguments.

Even if Cobra was not aware of the need to amend its complaint until after the deadline

---

[12] Even after Cobra learned of the identity of the purported Chinese co-inventor, Cobra still did not seek leave to amend or add a party. Nor did it seek leave to amend or add a party after it effected the March 7, 2015 assignment of rights between Lin JinXiang and Pangaea. Instead, it filed a status report that did not identify the alleged Chinese co-inventor, did not describe what documents Cobra was filing with the USPTO, made no mention of the assignment of rights or Pangaea, and in no way expressed an intent to amend the complaint. (DE 551.)

[13] Cobra devotes only two short paragraphs to its argument that it establishes good cause. The majority of Cobra's motion is aimed at excusing its inaccurate submission to the USPTO that this Court "designated" Lin JinXiang as a co-inventor of the invention. That issue, though troubling to the Court, is irrelevant to whether Cobra establishes good cause under Rule 16 for its proposed amendment. The Court notes, however, that Cobra overlooks material facts in its argument on this separate issue. Cobra claims the false statement that this Court "designated" Lin JinXiang as a co-inventor was never submitted to the USPTO's Certificate of Corrections Branch. While the physical assignment containing this false statement may not have been submitted to the Certificate of Corrections Branch, Cobra's submission to the Certificate of Corrections Branch referenced this assignment, noted it was already recorded with the USPTO, and identified where in the USPTO's records it could be located. (DE 573-2 at 17, 19.)  Therefore, contrary to Cobra's representations, the false statement was effectively a part of Cobra's submission to the Certificate of Corrections Branch.

[14] Cobra incorrectly states that the Court held Stone was not a co-inventor on December 10, 2014. As noted *supra*, the Court made this ruling in its September 22, 2014 order granting Defendants' motion for summary judgment on patent invalidity. (DE 533 at 13) ("Thus, Mr. Stone is not the sole inventor of the subject matter of the '858 Patent."). In its December 10, 2014 order, the Court held that Cobra could correct inventorship administratively rather than judicially. (DE 550.) At that time, it was already settled that Stone was not a sole inventor.

11

passed, this argument fails to address Cobra's fourteen-month delay between the Court's summary judgment order (when Cobra should have become aware of the complaint's deficiency) and Cobra's motion to amend. Assuming the scheduling order deadline was impossible to meet, Cobra was still required to exercise reasonable diligence once it knew or should have known of its need to amend its complaint. To demonstrate diligence under Rule 16's good cause standard, the movant must show that its noncompliance with the deadline was despite diligent efforts to comply *and* that it "was diligent in seeking amendment of the Rule 16 order, once it became apparent that [the movant] could not comply with that order." *Dag Enters.*, 226 F.R.D. at 106 (quoting *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607–08 (E.D. Cal. 1999) (alteration in original). On this record, Cobra's fourteen-month delay after it became apparent that it needed to make a post-deadline amendment is unjustified and demonstrates a lack of reasonable diligence. Because Cobra was not diligent in seeking leave to amend, it fails to show the good cause necessary to depart from the scheduling order's deadlines.

Cobra's argument that it could not move to amend until after the USPTO issued a certificate of correction is conclusory and incorrect. Correcting the patent was a separate issue from correcting the complaint. As inventorship and ownership are separate concepts, *see Ethicon*, 135 F.3d at 1456, nothing precluded Cobra from moving to add a co-owner as a plaintiff while it simultaneously awaited correction of the named inventors on the patent. Also, even if Cobra could not seek leave to amend its complaint until after the USPTO issued its certificate of correction (a contention for which Cobra provides no support), Cobra has no justification for failing to move to at least modify the scheduling order's amendment deadline when the Court entered its summary judgment order and Cobra knew or should have known its complaint was deficient and in need of amendment.

Even indulging Cobra's argument that it could only move to amend after the USPTO issued

a certificate of correction, Cobra inexcusably delayed seeking leave to amend for almost two months after it advised the Court of the USPTO's certificate of correction. Cobra did not request leave in its September 28, 2015 status report advising the Court of the USPTO's decision. It also did not request leave to amend or add parties in its October 9, 2015 response to the Court's order specifically requesting its position on how this case should proceed if reopened. This was despite the fact that Cobra filed this response one day after Defendants responded to the same question and stated that the case should be dismissed for Cobra's failure to join co-owners. (DE 567.)

Worse, at the time the USPTO issued the certificate of correction, Cobra was already aware of Defendants' motion to dismiss for failure to join co-owners. Rather than seek leave to amend, Cobra continued to resist Defendants' motion. This required the Court to expend judicial resources holding a hearing on the motion—even though Cobra actually agreed with Defendants that its complaint was deficient (which Cobra delayed expressing to the Court until the hearing). And despite stating at the hearing that it would move to amend expeditiously, Cobra did not withdraw its opposition to the motion and waited until after the Court expended further judicial resources ruling on the motion before it finally moved to amend. This is not an example of the diligence contemplated by Rule 16's good cause standard.

The Court also rejects Cobra's argument (made during the hearing on the motion to dismiss, but not in its motion to amend) that it could not have moved for leave to amend while this case was administratively closed for it to correct inventorship. This contention is belied by Cobra's numerous filings while this case was administratively closed. Furthermore, if Cobra believed it was not allowed to file motions while the case was administratively closed, it could have sought leave to do so or moved to reopen the case for the purpose of amending its complaint or seeking an extension of the

13

time to do so. Moreover, the case was not administratively closed until almost three months after the Court held that Stone was not the sole inventor. During that time, nothing precluded Cobra from moving for an extension of the deadline to amend and add parties. Also, as noted *supra*, Cobra still unduly delayed moving for leave to amend after the Court reopened the case—which forced the Court to expend judicial resources holding a hearing and ruling on a motion to dismiss that Cobra ultimately agreed was correct.

Finally, to the extent Cobra complains that the Court's denial of its motion to amend renders its quest to correct inventorship of the patent in vain, Cobra has only itself to blame. When the Court stayed this case to allow Cobra to correct inventorship with the USPTO, the Court had no way of knowing whether its holding that Stone was not the sole inventor also meant that Stone was not the sole owner. While they are related, inventorship and ownership are separate concepts in patent law and not necessarily coextensive. As far as the Court knew, despite not being the sole inventor, Stone could have acquired all the ownership rights in the patent before he transferred those rights to Cobra (perhaps pursuant to an agreement with the Chinese technicians he worked with), or Cobra could have acquired the remaining ownership rights to the patent after obtaining Stone's co-ownership interest. Only Cobra knew that this had not occurred.

Despite its knowledge that it was not a sole owner, Cobra waited for Defendants to independently discover that Cobra was not a sole owner. Even after Defendants' discovery and motion to dismiss, Cobra continuously fought the issue rather than seek leave to amend—even though it apparently agreed that it needed to add co-owners as plaintiffs. Indeed, Cobra's opposition to Defendants' motion signaled that there was a possibility that no amendment was necessary. It was only when Defendants' motion to dismiss for failure to join co-owners was ripe for review did it

become clear to the Court that Cobra had not acquired all the ownership interests in the '858 patent. In short, when Cobra sought to correct inventorship it knew what the Court did not: Cobra also needed to amend its complaint to join co-owners because it had not acquired all the ownership interests in the '858 patent. It was incumbent on Cobra to advise the Court then that it would also need to amend its complaint to add a co-owner.

Because the Court finds that Cobra did not exercise reasonable diligence, the Court need not consider the parties' additional arguments. *Girard*, 2011 WL 7962612, at *2 ("Put another way, if the party seeking the extension was not diligent, the good cause inquiry ends with a denial of the motion to amend.").[15]

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Leave of Court to Amend Complaint (DE 573) is **DENIED**.

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 28th day of January, 2016.

_____
KENNETH A. MARRA
United States District Judge

---

[15] The Court notes that the result would be the same even under the more lenient Rule 15 standard. "Under Rule 15, leave to amend is not automatic." *Girard*, 2011 WL 7962612, at *5. Under the facts of this case, Cobra's undue delay also supports a denial under Rule 15. *See id.* at *6.